UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PIETRO TERRELL,

        Petitioner,

v.                                              Case No. 1:08-CV-179
                                                HON. GORDON J. QUIST

CAROL HOWES,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner filed this § 2254 petition for a writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights.  On July 2, 2002, a jury convicted Petitioner of First Degree Felony Murder (MICH. COMP. LAWS § 750.316(1)(b)), for which Petitioner was sentenced to life imprisonment without parole. PageID.558-559. Petitioner remains in the custody of the Michigan Department of Corrections (MDOC).

      After his trial, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. PageID.559. The Court of Appeals denied his application and affirmed his conviction on June 8, 2004. PageID.559; *People v. Terrell*, No. 243097, 2004 WL 1254310 (Mich. Ct. App. June 8, 2004). However, the appellate court remanded the case to the trial court to determine if a new trial was warranted on the basis of a witness's recanted testimony. *Id.* Petitioner sought reconsideration of his *Crawford* hearsay claims in the Michigan Court of Appeals, but the appellate court denied his claims on the merits on July 28, 2004. ECF No. 48. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was denied on January 27, 2005. *People v. Terrell*, 472 Mich. 851 (2005).

Pursuant to the appellate court's remand order, the Michigan trial court held evidentiary hearings on May 27, 2005, and January 26, 2006. ECF No. 46, 47. The trial court denied Petitioner's motion for a new trial. ECF No. 47 at 62-81. Petitioner appealed the trial court's denial of his request for a new trial, which the appellate court denied on June 29, 2006. ECF No. 51. Petitioner appealed to the Michigan Supreme Court, but this appeal was denied on November 29, 2006. ECF No. 52.

Petitioner did not file a motion for relief from judgment in the state trial court, nor did he appeal to the United States Supreme Court. Instead, he filed this habeas petition on February 22, 2008. ECF No. 1.[1]

Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

> I. Whether the Petitioner's 6th Amendment's [sic] right[s] were violated when the jury decided his case was not a fair cross representation of the population of Keny [sic] County.
>
> II. Whether Petitioner's Right Under the Confrontation Clause of the 6th Amendment was Violated in Allowing Hearsay Evidence.
>
> III. Due Process Violation resulted to Petitioner because of [an] eight (8) year delay from crime to arrest.
>
> IV. Petitioner's Right to Due Process [was] violated where there was insufficient evidence to convict him and where there was no underlying felony to support.
>
> V. Whether the decision of the Trial Court to allow the admission of a tape-recording between Petitioner and his sister during the trial where he commented in street language about his opinion of the prosecutor and even his own lawyer denied him of a fair trial contrary to the Due Process Clause and 14th Amendment.

---

[1] Petitioner filed an amended petition on April 29, 2008. ECF No. 5.

VI. The Petitioner was denied Due Process and his right to a fair trial was violated when after conviction, a jail house snitch admitted that he lied, yet the Trial Court refused him a new trial.

VII.  Whether the Petitioner was denied a fair trial in violation of the 14th Amendment Due Process Clause where the Prosecution engaged in misconduct by using the perjured testimony of witnesses.

VIII. Whether the Petitioner was denied a fair trial under the Due Process of the 14th Amendment where the Trial Court did not sua sponte change venue due to the over whelming [sic] amount of pre-trial publicity that in effect "titled [sic] the scales" against Petitioner and denied him a fair trial.

PageID.563-564, 566-567, 569-570.  Respondent filed a response to the amended petition on November 5, 2008, addressing only Petitioner's fourth claim. ECF No. 14. Magistrate Judge Scoville issued a report and recommendation on March 1, 2011, dismissing this fourth claim in Petitioner's amended petition. ECF No. 59. Judge Bell adopted this report and recommendation on March 17, 2011. ECF No. 60. Respondent then filed a response to the remaining claims raised in Petitioner's amended petition. ECF No. 66, 67, 70.   The Court subsequently stayed this case pending the Sixth Circuit's decision in *Ambrose v. Booker*, 801 F.3d 567 (6th Cir. 2015). ECF No. 79. Once resolved, Petitioner and Respondent filed briefs discussing how the ruling in *Ambrose* affects the present case. ECF No. 84, 85.  The matter is now ready for a decision.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996.  PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly.  *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable").  This Court defers to state court decisions when the state court addressed the merits of petitioner's claim.  *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach

the question).  When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, the undersigned concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

For Petitioner's first claim, he asserts that his Sixth Amendment rights were violated because "the jury [that] decided his case was not a fair cross representation of the population of Ken[t] County."  PageID.563.  Petitioner contends that "[a]t the time of Petitioner's trial there was shown to be a systematic exclusion of African American jurors due to a computer malfunction resulting in a significantly reduced minority representation on the jury and in fact, Petitioner had only 1 African American juror on his jury." PageID.563.  Petitioner notes that this computer glitch resulted in jury notices not being sent to certain zip codes in Kent County that included African American and Hispanic populations, as well as low income persons.[2] PageID.33.  As a result, even though there were 101 people present at his jury venire, only three were African Americans (two of whom were ineligible). PageID.33. The one remaining African American made it to the sixteen person jury, but was deemed an alternate at the end of the trial—meaning this person did not participate in the verdict. PageID.33. Petitioner's trial attorney was informed of this "computer glitch" after Petitioner's trial, and thus

---

[2]As discussed in *Ambrose v. Booker*, 684 F.3d 638, 640-43 (6th Cir. 2012), this Kent County "computer glitch" took place from April 2001 to early 2002 after the county took assumed control of a database (from a private vendor) that was used to randomly select jurors. The error resulted in "nearly 75 percent of the county's 454,000 eligible residents [being] excluded from potential jury pools since spring 2001" and "[m]any blacks were excluded from . . . jury pools due to a computer glitch that selected a majority of potential candidates from the suburbs." *Id.* at 641 (citation omitted).

raised the issue at Petitioner's sentencing. PageID.41.

Respondent asserts that this claim is procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception can be met only in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish

-6-

that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The parties' filings demonstrate that they do not dispute that Petitioner's fair-cross-section claim is procedurally defaulted, as he did not raise this claim until sentencing. PageID.1141, 1218; *see Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012) (citing *People v. Dixon*, 217 Mich. App. 400, 403-04 (1996) ("There is no dispute that petitioners defaulted their claims by failing to object to the jury venire at trial, in violation of Michigan's contemporaneous objection rule.")). Moreover, Respondent concedes that the "cause" prong for overcoming procedural default is not in dispute either. PageID.1201 ("In the first *Ambrose* decision, the Sixth Circuit made clear that the cause prong has been satisfied [with regard to the computer glitch issue in Kent County, Michigan], and therefore this component of procedural default is no longer at issue.") (citing *Ambrose*, 684 F.3d at 645-59). Consequently, the only question remaining with regard to overcoming the procedural default issue is whether Petitioner has demonstrated sufficient prejudice.

When a jury selection claim, such as this one, has been procedurally defaulted, the petitioner must demonstrate actual prejudice by showing that "there was a reasonable probability that 'a properly selected jury [would] have been less likely to convict.'" *Ambrose*, 684 F.3d at 652 (quoting *Hollis v. Davis*, 941 F.2d 1471, 1482 (11th Cir. 1991)). Moreover, "'the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'" *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994)); *see also*

*Ambrose*, 684 F.3d at 651 ("[F]ederal courts should not reverse state court decisions unless a petitioner can show that the outcome would have been different."). To make this determination, the courts must carefully review the transcripts and determine if there is a reasonable probability that the outcome of the case would have been different (i.e., the jury would have reached another result). *Ambrose*, 684 F.3d at 652 (noting that the prejudice standard stems from the *Strickland v. Washington*, 466 U.S. 668 (1984) prejudice standard); *see also Ambrose*, 801 F.3d at 580 ("'The most important aspect to the [actual prejudice] inquiry is the strength of the case against the defendant,' which requires courts to take a 'careful look at the transcripts involved.'") (citation omitted).

Upon review of the transcripts of record, it is clear that the evidence against Petitioner at his trial was overwhelming. Petitioner's trial was twenty-two days, and several witnesses testified either as co-conspirators or people to whom Petitioner confessed his crimes. The Michigan Court of Appeals also, when evaluating Petitioner's sufficiency of the evidence claim, concluded that the evidence against Petitioner at trial was strong:

> Defendant first argues that the evidence was insufficient to support his felony-murder conviction. We disagree. In reviewing a claim that the evidence was insufficient, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v. Hardiman*, 466 Mich. 417, 421; 646 NW2d 158 (2002). Circumstantial evidence and reasonable inferences that arise therefrom can constitute sufficient proof of the elements of the crime. *People v. Jolly*, 442 Mich. 458, 466; 502 NW2d 177 (1993).
>
> The victim, Robert Fryling, was a regular customer of various prostitutes, including Christina VanMeter and Paula Skwarek. VanMeter testified that on August 16 or 17, 1993, she, Skwarek, and defendant, who was their pimp, made plans to rob the victim in his

home. On August 18, 1993, VanMeter drove Skwarek and defendant to the victim's house. Defendant let Skwarek in the house while he waited outside with a gun in his pants and a sawed-off shotgun in his sleeve. A few minutes later, defendant walked into the house while VanMeter waited inside the house at the front door as a lookout. VanMeter then heard shots and a dog barking. Defendant and Skwarek walked from the bedroom into the dining room and VanMeter heard more shots. Defendant and Skwarek then walked back to the front door and they all left. When VanMeter and Skwarek asked defendant why he shot the victim, he told them to "shut up." Later that morning, the victim's mother and father-in-law found the victim and his dog shot to death in the house. One of the victim's pants' pockets was inside out, but he had $60 in another pocket and the victim was still wearing a very expensive watch. The victim's wallet was missing and was never found, and the victim's wife testified that the victim may have owned a gold numberless watch that she had not seen since his death. VanMeter testified that defendant took a gold numberless watch, a ring, a necklace, and some money from the victim's house.

On August 25, 1993, VanMeter was arrested for prostitution. Leanna Rouker, who knew defendant and was in jail at the same time as VanMeter, testified that VanMeter told her that Skwarek "was in the room when it happened," and that defendant went into the house, because Skwarek "was taking too long." VanMeter also commented that they only got $20, but she didn't believe that, because there was a ring with diamonds. On January 10, 1994, VanMeter told police that defendant and Skwarek killed and robbed the victim. VanMeter told the police that she was not involved in the crime and subsequently told Rouker that if she had told the police that she was with defendant, "they could charge [her] too." Rouker told the police what VanMeter had told her while in jail. After Rouker was released from jail, defendant threatened her. Defendant told her that he knew what she had done and that he had killed someone before and would do it again.

Renaldo Kilgore, a pimp who grew up with defendant, testified that defendant told him that he and Skwarek tried to rob the victim, and that he had shot and probably killed him. Defendant told Kilgore that he was worried that Skwarek and VanMeter would tell the police about the murder. Additionally, Fred Devries, who dated Skwarek, testified that Skwarek told him that defendant killed the victim.

-9-

In 2001, the Federal Bureau of Investigation (FBI) interviewed VanMeter, who implicated defendant and Skwarek as the killers of the victim. Defendant was arrested and put in jail. Two men who were in jail with defendant, Anthony Lee and Eddie Crump, testified for the prosecution. Lee testified that defendant told him that he and two of his prostitutes planned to rob a millionaire client. However, when the client said he had no money, defendant "shot him in the back of the head execution style." Defendant also shot the victim's dog. Defendant also told Lee that one of the prostitutes was dead[1] and the other prostitute was in the other room when he shot the victim, so she would only be able to testify that she heard shots.

Crump also testified that defendant told him about his plan to rob a millionaire client. Defendant described to Crump how he went to the victim's house with Skwarek and VanMeter and went in the house when the victim opened the door to admit Skwarek. Defendant told Crump how he shot the victim and his dog "execution style" when the victim told defendant that he did not have much money in the house.[2]

. . . .

[T]he evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant shot and killed the victim . . . .

_____

1. Skwarek died of a drug overdose before the trial.
2. After defendant was convicted, Crump recanted his testimony. Crump's recantation is the subject of defendant's motion for remand, which is addressed, *infra*, in Issue VI of this opinion.

*Terrell*, 2004 WL 1254310, at **1-2. Based on the vast array of corroborating testimony at Petitioner's trial, it is clear that the prosecution's case against Petitioner was strong. *Ambrose*, 801 F.3d at 580; *cf. Garcia-Dorantes v. Warren*, 801 F.3d 584, 596-99 (6th Cir. 2015) (noting that the evidence of intent for murder at the petitioner's trial was not overwhelming, which satisfied the "actual prejudice" standard for overcoming procedural default).

Nonetheless, Petitioner attempts to undermine the evidence and testimony presented at trial in order to satisfy the actual prejudice standard for overcoming the procedural

default. For example, Petitioner contends that: (1) Ms. VanMeter was not a credible witness, (2) there was not any DNA evidence or prints linking Petitioner to the crime scene, (3) prejudicial hearsay was admitted through Mr. Hillary, Mr. DeVries, and Ms. Rouker, (4) the testimony of Mr. Lee and Mr. Crump was recanted, and (5) that prejudicial phone evidence was admitted. PageID.1158-1160. Petitioner raises these issues in his remaining six claims and, for the reasons explained in the remainder of this opinion, they lack merit. Moreover, Petitioner's theory of defense—that he was not present at Mr. Fryling's home on the day of the murder—was weak. The defense provided no information to corroborate this theory; rather, they focused on the alleged "lack of evidence" to prove Petitioner's innocence. While "a defendant in a criminal trial need not . . . produce any evidence," *United States v. Drake*, 885 F.2d 323, 323 (6th Cir. 1989), a defendant must show some support for his theory in order to argue that it is reasonably probable that a different jury would have accepted this defense. *Ambrose*, 801 F.3d at 581. As a result, Petitioner has not demonstrated that there is a reasonable probability that the outcome of the case would have been different (i.e., the jury would have reached another result). *Ambrose*, 684 F.3d at 652.  Consequently, Petitioner has not established actual prejudice sufficient to overcome the procedural default on his fair-cross-section claim, and the undersigned recommends that this claim be denied.

        In his second claim, Petitioner asserts that his Confrontation Clause rights under the Sixth Amendment were violated when the trial court admitted hearsay statements at trial. PageID.564. The alleged hearsay statements were improperly admitted under the "catch all" hearsay exception. PageID.564. The specific hearsay statements arose when Fred DeVries and Leanna Rouker testified with regard to statements that the deceased Ms. Skwarek said to them, as

-11-

well as a statement that Christine VanMeter made to her attorney, Richard Hillary, which Mr. Hillary then testified to at trial.

The Sixth Amendment guarantees criminal defendants a right to confront and cross-examine adverse witnesses against them at trial. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). Testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless witnesses are unavailable and defendants had a prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by the court. *Crawford v. Washington*, 541 U.S. 36 (2004) (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)). Testimonial hearsay may include a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51-52 (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)). For example, testimonial statements include formal statements made to government officers by an accuser (by way of an affidavit, prior testimony, deposition, etc.), or testimony arising from a preliminary examination, a grand jury, a former trial, or a police interrogation. *Crawford*, 541 U.S. at 51-52.

Nontestimonial hearsay does not implicate the Confrontation Clause. *Crawford*, 541 U.S. at 61-62; *see Davis v. Washington*, 547 U.S. 813, 823-34 (2006); *Swift v. Burt*, No. 15-11055, 2016 WL 1583809, at *5 (E.D. Mich. Apr. 20, 2016). A statement is not testimonial if it is "a casual remark to an acquaintance, business records, or statements made in furtherance of a conspiracy." *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 826 (E.D. Mich. 2009) (citing *Crawford*, 541 U.S. at 68 ); *see also United States v. Franklin*, 415 F.3d 537, 545-46 (6th Cir. 2005) (noting statements made to a friend by happenstance are not testimonial); *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005) (noting "statements [that] were not made to the police or in the

course of an official investigation . . . [nor in an attempt] to curry favor or shift the blame . . ."
are nontestimonial statements).

Petitioner's first Confrontation Clause claim is that Mr. DeVries and Ms. Rouker
were improperly permitted to testify with regard to statements that the deceased Ms. Skwarek had
previously made to them.  Upon review of the transcripts, it is clear that Ms. Skwarek's
statements to Mr. DeVries and Ms. Rouker were nontestimonial, as these two witnesses were
either a friend or acquaintance of Ms. Skwarek and the statements were made by happenstance.
These witnesses were not, for example, police officers or government informants that were
attempting to elicit statements to further prosecution against Petitioner. *See, e.g., Franklin*, 415
F.3d at 545. As a result, Petitioner cannot maintain a Confrontation Clause claim with regard to
the statements made by Mr. DeVries and Ms. Rouker at trial, as nontestimonial statements do not
implicate this Clause.

Petitioner's next Confrontation Clause claim is that the trial court impermissibly
allowed Ms. VanMeter's attorney (Richard Hillary) to testify as to statements that Ms. VanMeter
had told him—that she had been to Mr. Fryling's home, was involved in an armed robbery and
homicide, and that she was being cooperative with law enforcement. PageID.50. Petitioner
alleges that these statements were impermissibly admitted pursuant to Federal Rule of Evidence
803(24), the "catch all." PageID.50. Notably, however, Ms. VanMeter testified at trial—meaning
she was available for cross-examination.  ECF No. 29. As a result, Mr. Hillary's statements did
not violate Petitioner's Confrontation Clause rights because Ms. VanMeter was available to be
cross-examined about these statements. *See Crawford*, 541 U.S. at 59 n.9 ("Finally, we reiterate
that, when the declarant appears for cross-examination at trial, the Confrontation Clause places

-13-

no constraints at all on the use of his prior testimonial statements . . . . The Clause does not bar

admission of a statement so long as the declarant is present at trial to defend or explain it.").

 Even if Ms. VanMeter was not available to cross-examine at trial, her statements

(introduced by Mr. Hillary) would still be admissible because the Confrontation Clause "does not

bar the use of testimonial statements for purposes other than establishing the truth of the matter

asserted." *Crawford*, 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

The Michigan Court of Appeals concluded that the statements pertaining to Ms. VanMeter that

Mr. Hillary testified to at trial were not used for the truth of the matter asserted, and therefore did

not violate Petitioner's right to confront the witnesses against him:

### 3. Hillary's Testimony

 Third, defendant argues that the trial court abused its discretion by allowing Hillary's testimony regarding a conversation in which VanMeter told him that Skwarek would verify her statement to the police.[9] Again, we disagree. VanMeter's statement was not offered to prove the truth of the matter asserted, but was offered to show that VanMeter did not know that Skwarek was dead. Defendant had suggested at trial that VanMeter's testimony was fabricated in order to get back at defendant. The purpose of offering VanMeter's statement was to show that when VanMeter informed the police that defendant committed the murder, she did so with the belief that Skwarek could confirm her statement, and that it was [in] her best interests to come forward with this information and make a deal with law enforcement before Skwarek had an opportunity to come forward with the same information. Because this testimony was not offered to prove the truth of the matter asserted, it was not hearsay under 801(c).[10]

_____

9. In his brief on appeal, defendant misrepresents the nature of the statements admitted at trial, stating that Hillary was allowed to testify that VanMeter told him "that she had been at decedent's home and had been involved in an armed robbery and homicide, and had been cooperative with law enforcement." In fact, Hillary only testified that

-14-

VanMeter told him that Skwarek would verify her statement to the police.

10. Once again, even if this testimony was inadmissible, defendant has not shown that it is more probable than not that the alleged error resulted in a miscarriage of justice. *Lukity*, *supra* at 494-495.

*Terrell*, 2004 WL 1254310, at *7. The appellate court thoroughly analyzed the purpose of Mr. Hillary's recitation of Ms. VanMeter's statements to him and demonstrated that these statements were not used for the truth of the matter asserted. Consequently, the Confrontation Clause was not violated when Mr. Hillary testified as to the statements Ms. VanMeter told him about Petitioner, and the undersigned recommends that this claim be denied.

For his third claim, Petitioner asserts that his due process rights were violated because there was an "eight (8) year delay from crime to arrest." PageID.566.  Petitioner argues that he was prejudiced by this delay because "[t]he same witnesses were available to the prosecutor from the beginning," while one of Petitioner's witness's died and the other witness's memory failed. PageID.566. However, Respondent contends that this claim has not been exhausted since Petitioner raised it for the first time to the Michigan Supreme Court on appeal from the trial court's decision on remand. *See, e.g., Terrell*, 2004 WL 1254310 (noting Petitioner did not raise pre-indictment delay on direct appeal to the Michigan Court of Appeals); ECF No. 2-4 (noting Petitioner did not raise the issue of pre-indictment delay); PageID.329-341 (noting Petitioner first raised pre-indictment delay to the Michigan Supreme Court on appeal of the trial court's remanded decision).

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*,

526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under M.C.R. 6.500 *et. seq*. Under Michigan law, one such motion may be filed after August 1, 1995. M.C.R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the undersigned concludes that he has at least one available state remedy, and it is therefore recommended that this claim be denied without prejudice.

For his fifth claim, Petitioner asserts that his right to a fair trial under the Due Process Clause and Fourteenth Amendment were violated when the trial court admitted "a tape-recording between Petitioner and his sister during the trial where he commented in street language about his opinion of the prosecutor and even his own lawyer." PageID.569. Petitioner

-16-

indicates that the purpose of this phone call to his sister was to "vent" in private, and in so doing, he was "loud, hostile, and used street language." PageID.569.  In comparison, while testifying at his trial, Petitioner was "calm and charming and used appropriate language." PageID.569. In addition, during his private phone call to his sister, Petitioner made "no admissions as to the crime he was charged with," and the tape only "showed a man angry with the system." PageID.569. Ultimately, Petitioner contends that the tape showed Petitioner at his worst, and that the tape was not a fair depiction of who he was, and as such it should not have been admitted at trial. PageID.569.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 124 S. Ct. 345 (2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly."  *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

Because Petitioner's claim relates to the admission of evidence at his trial, his claim is not cognizable on habeas review. *See Estelle*, 502 U.S. 62. Consequently, the undersigned recommends that this claim be denied.

Petitioner's sixth claim is that "Petitioner was denied Due Process and his right to a fair trial . . . when after conviction, a jail house snitch [Eddie Crump and Anthony Lee] admitted that [they] lied, yet the Trial Court refused him a new trial." PageID.569. Inmates Eddie Crump and Anthony Lee (witnesses for the prosecution) recanted their testimony after Petitioner was convicted, which caused the Court of Appeals to remand the case to the trial court to determine whether a new trial was warranted. Petitioner states that this recanted testimony is crucial to his defense because the prosecution "could not have convicted Mr. Terrell soly [sic] on the testimony of Christine Van Meter." PageID.60. Ultimately, Petitioner asserts that this evidentiary ruling was "so egregious that it result[ed] in a denial of fundamental fairness," thereby violating Petitioner's due process rights and warranting habeas relief pursuant to *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). PageID.62-63.

As previously mentioned, state law issues (such as evidentiary rulings) are not cognizable on habeas review. *Estelle*, 502 U.S. at 67-68 (noting that evidence admission is not cognizable on federal habeas review as it is a state-court determination of state-law issues). However, even if these state law issues were cognizable on habeas review, "'a determination of a factual issue made by a State court shall be presumed to be correct,' and the petitioner has the burden of rebutting this presumption by clear and convincing evidence." *Smith v. Booker*, No. 07-CV-15274, 2010 WL 451054, at *5 (E.D. Mich. Jan. 29, 2010) (citing 28 U.S.C. § 2254(e)(1)). Section 2254(d) does not permit federal habeas courts to redetermine the credibility

of witnesses when their demeanor has been observed by the state trial court, and not the federal court. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The trial court is in the best position to determine the credibility of a witness. *Smith*, 2010 WL 451054, at *5. Moreover, credibility determinations lie within the trial judge's province. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Therefore, a state trial judge's credibility determination is entitled to great deference since he or she had the opportunity to observe the witness's demeanor when testifying. *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 339 (1952).

After remanding the case to the trial court to resolve the issue of Mr. Crump's and Mr. Lee's recanted testimonies, the trial court denied Petitioner's request for a new trial based on the trial judge's credibility determination of their recanted testimonies:

> The question before the Court, as indicated at the outset, is whether the recantation of Eddie Crump is such as to warrant granting a new trial to Mr. Terrell.

> First . . . the law has long recognized that recanting testimony of witnesses who gave evidence at a criminal trial is generally accorded very little weight. The reason is that the witnesses took a solemn oath, were subject to cross-examination in open court, and the fact they sometime later said – come forward and say that their trial testimony was not true is a fairly common phenomenon, fairly easily procured, frankly, and is something that we see not infrequently, particularly in a situation such as we have here.

> Whatever else can be said about Eddie Crump, it has to be said that he is in the same prison system with the defendant Pietro Terrell, and he has, at various times, expressed grave fear of Mr. Terrell and his family, and has even indicated that he felt Mr. Terrell had a hit out on him.

> Mr. Crump, after having given testimony and after having gotten a perhaps more favorable sentence in his pending case, was sent to the state prison system, which is the same system occupied by the defendant in this case. It's interesting to note that his communications

-19-

with the Prosecutor's office and the sentencing judge never indicates that his trial testimony was untrue, but do indicate a persistent desire to be sent to the federal prison system out of reach of Mr. Terrell.

It was only when it became apparent that, for whatever reason, the efforts by the authorities to get Mr. Crump moved into federal system would be of no avail, that Mr. Crump decided to recant of his trial testimony.

Now think about it. Mr. Crump has to do a lot of years behind bars with Mr. Terrell and Mr. Terrell's friends and relatives. Mr. Crump's circumstances as a snitch are undoubtedly extremely unpleasant and uncomfortable, and indeed, quite possibly extremely unsafe. What, under the circumstances, is Mr. Crump to do?

The obvious thing is to try to make it up to Mr. Terrell and Mr. Terrell's friends, neighbors, and relatives by recanting of his trial testimony. In this manner, perhaps he can remove the onus of being a rat or a snitch in the prison, and if Mr. Terrell or anybody else has some sort of animus for him, or even a hit on him, perhaps have that relieved or removed. Mr. Crump's motive, it seems to me, is transparent.

Moreover, it's clear that he's extremely angry with the prosecution for not having arranged his transfer into federal prison, and although we have evidence from Mr. Scheiber that considerable efforts were made, it appears that, for whatever reason, the Michigan Department of Corrections would have none of it, and the transfer was not arranged.

It is my opinion that the recantation is a late afterthought by Mr. Crump, and that it is solely the product of his desire to lessen his stigma in the prison system as a snitch and to repair relations with Mr. Terrell; that had he been transferred to the federal system, none of this would have transpired.

. . . .

It seems to me that this testimony simply is inherently unreliable, and transparently motivated by Mr. Crump's ulterior motives to relieve himself of an onus and a stigma in the prison system, and perhaps to protect, as he sees it, his own safety and well-being.

-20-

> The testimony of Mr. Lee, it seems to me, adds nothing to anything.
> Mr. Lee did not come in and say that his testimony was untrue and,
> although Mr. Katz thought that he was right on the edge of admitting
> perjury, it didn't seem to me that he was very close to the verge of
> that at all. About all he was on the verge of was a total loss of recall.
>
> . . .
>
> Under the circumstances, I see no basis here for ordering a new trail
> [sic], and it seems to me that this is a good example of why the law
> looks so dimly upon recanting testimony of witnesses postured as Mr.
> Crump is.
>
> The court will, therefore, respectfully deny the motion . . .

ECF No. 50 at 78-81 (Evidentiary Hearing Tr., Jan. 26, 2006); *see also* ECF No. 51 (Trial Court

Order Jan. 31, 2006).

The decision of the trial court was affirmed by the Michigan Court of Appeals,

and this decision was not contrary to, or an improper application of, any well-established

Supreme Court precedent.  The trial judge observed Mr. Crump and Mr. Lee at Petitioner's trial

and at the evidentiary hearing years later, and the judge determined that the timing of their

recanted testimonies was suspect for the aforementioned reasons. Because Petitioner has not

provided any information to corroborate the recanted testimonies of these two witnesses, he

failed to demonstrate that the trial court's decision was improper. *See Smith*, 2010 WL 451054, at

*7 (citing *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (stating that uncorroborated

recanted testimonies are even less reliable when the trial testimony was consistent with other

evidence and the recanted testimony is not)). As a result, the undersigned defers to the credibility

determinations of the two witnesses' recanted testimonies, and therefore recommends that this

claim be denied.

-21-

Petitioner's seventh claim is that he was denied a fair trial when the prosecution "engaged in misconduct by using the perjured testimony of witnesses." PageID.569. Specifically, Petitioner asserts that the prosecution acted improperly by having Mr. Crump and Mr. Lee testify falsely on the stand. PageID.569.  After the trial, Petitioner contends that the snitches "admitted that they had lied and were encouraged to lie by the authorities." PageID.569. Based on this information, "[t]he Michigan Court of Appeals remanded the matter to the Trial Court to conduct a hearing as to whether Petitioner should be granted a mew [sic] trial based upon the recanted testimony[, but] the Trial Court denied the motion." PageID.569.

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). "The Supreme Court has long recognized that due process is denied where '[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.'" *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir. 2010) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972). As such, when a conviction is obtained by the use of knowingly perjured testimony, the trial is rendered fundamentally unfair, and the conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted).

It is Petitioner's burden to show that the testimony in dispute was perjured, which may be done by satisfying the three-part test fashioned by the Sixth Circuit "for determining

-22-

whether there was a denial of due process through the use of false testimony," *Peoples v. Lafler*,

734 F.3d 503, 515 (6th Cir. 2013).

> In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Lafler*, 734 F.3d at 516 (quoting *Brooks*, 626 F.3d at 894-95 (quoting *Coe v. Bell*, 161 F.3d 320,

343 (6th Cir. 1998))). The testimony of a witness is material only when there is a reasonable

likelihood that it affected the outcome of the trial. *Lafler*, 734 F.3d at 516 (citing *Brooks*, 626

F.3d at 895).

       Here, Petitioner has not demonstrated any of the three factors for his due process

claim. First, while it is clear that Mr. Crump and Mr. Lee were either lying at the trial *or* at the

evidentiary hearing, Petitioner has not clearly established that the perjury occurred at his trial. In

fact, the trial judge stated that Mr. Crump's recanted testimony, for example, was extremely

suspect as it occurred years after Petitioner's trial and only after being housed in the same

correctional facility as Petitioner—implying that the recanted testimony was more likely the

perjured one. ECF No. 50 at 78-81 (Evidentiary Hearing Jan. 26, 2006). Second, as the trial judge

noted at the January 26, 2006 evidentiary hearing, the jury informed the trial attorneys that they

only considered the testimony of Ms. VanMeter when deciding whether Petitioner was guilty

(ECF No. 50 at 63-65)—meaning the testimonies of Mr. Lee and Mr. Crump were not material to

Petitioner's case. Third, Petitioner has not established that the prosecutor should have known (or

knew) that Mr. Lee and Mr. Crump were lying since their testimonies were consistent with many

other witnesses' testimonies that took place during trial. As a result, Petitioner has not shown that

any prosecutorial misconduct occurred based on allowing Mr. Lee and Mr. Crump to testify at

Petitioner's trial. Consequently, the undersigned recommends that this claim be denied.

For Petitioner's eighth and final claim, he asserts that he was denied a fair trial

when the trial court "did not sua sponte change venue due to the over whelming [sic] amount of

pre-trial publicity that in effect "titled [sic] the scales" against Petitioner." PageID.570.

Petitioner noted the highly publicized nature of his trial in his petition:

> This murder involved a wealthy business man [sic] in Grand Rapids.
> He was restated [sic] to the DeVos family, founders of The Amway
> Company. It was revealed that the deceased led a "double life," by
> day he was the respected business man who closed deals at the
> exclusive clubs and appeared at the important charity events. By
> night, he roamed the streets and alleys of the shady side of Grand
> Rapids, soliciting dozens of prostitutes, many who were addicted to
> crack. All the lurid details of his sexual activities combined with the
> murder was in fact a "made-for-t.v." drama. Petitioner was portrayed
> as the pimp and procurer of these woman [sic] and that the motive to
> kill was robbery. Print and radio & t.v. could not get enough of this
> story, making it impossible to get a fair trial.

PageID.570; *see also* ECF No. 2.

Petitioner raised this claim to the Michigan Court of Appeals in his direct appeal.

The appellate court reviewed the claim and denied it on procedural grounds:

> Defendant next argues that the trial court erred in failing to sua sponte
> order a change of venue based on allegedly excessive pretrial
> publicity. We disagree. Defendant did not request a change of venue
> before the trial. Furthermore, the record discloses that the question of
> pretrial publicity was discussed at a pretrial hearing, and that defense
> counsel agreed with the trial judge that pretrial publicity would not
> pose a concern. In light of this record, defendant arguably waived this
> issue. *People v. Riley*, 465 Mich. 442, 449; 636 NW2d 514 (2001).
> Regardless, to the extent this issue is reviewed as an unpreserved
> issue, appellate relief is not warranted because defendant has not

-24-

demonstrated a plain error affecting his substantial rights. *Carines*, *supra* at 774.

*Terrell*, 2004 WL 1254310, at *4. As mentioned by the appellate court, Petitioner procedurally defaulted his change of venue claim by failing to contemporaneously object to, or request, a change of venue before trial. *See People v. Van Dorsten*, 441 Mich. 540, 544-45 (1993). It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Kelly*, 423 Mich. 261, 271-72 (1985). Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default this claim in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Accordingly, review by this court is barred unless Petitioner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 485. However, Petitioner has not set forth any "cause" explaining why he failed to raise his change of venue claim in a timely manner. As a result, his claim is procedurally defaulted.

Even if Petitioner's claim was not procedurally defaulted, his claim still fails on the merits. The situations in which pretrial publicity has prejudiced a defendant's right to a fair trial are extremely narrow and limited to extraordinary circumstances. *See DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998). Prejudice may be presumed only in cases "where the influence of the news media, either in the community at large, or in the courtroom itself, 'pervaded the proceedings.'" *Galvan v. Stewart*, No. 2:15-CV-10882, 2016 WL 1090424, at *5 (E.D. Mich. Mar. 21, 2016) (*Murphy v. Florida*, 421 U.S. 794, 798-99 (1975) (internal citations omitted)).

-25-

However, even pervasive pretrial publicity does not always lead to an unfair trial. *Id.* (citing *DeLisle*, 161 F.3d at 382). Indeed, the jury's "indicia of impartiality" is disregarded "only in those cases 'where the general atmosphere in the community or courtroom is sufficiently inflammatory.'" *DeLisle*, 161 F.3d at 382 (quoting *Murphy*, 421 U.S. at 802). This means that mere "prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint." *DeLisle*, 161 F.3d at 382. Jurors need not be completely ignorant of the facts and issues involved in a defendant's case, especially given the rate in which information can spread. *Id.* at 382-83 (citing *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)). In fact,

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 723. Therefore, the relevant inquiry is "whether the [juror's] exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law as stated to the evidence presented." *Galvan*, 2016 WL 1090424, at *5 (citing *Dell v. Straub*, 194 F. Supp. 2d 629, 654 (E.D. Mich. 2002)).

Here, Petitioner has presented evidence of "straight news stories rather than invidious articles which tend to arouse ill will and vindictiveness." *Galvan*, 2016 WL 1090424, at *5 (quoting *DeLisle*, 161 F.3d at 385). The number of articles provided by the parties with relation to Petitioner's trial were not so numerous or inflammatory as to render his trial unfair; instead, the articles set forth the "bare-bones facts" in the trial. *Galvan*, 2016 WL 1090424, at *5

(citing *Deel v. Jago*, 967 F.2d 1079, 1087-88 (6th Cir. 1992)). As a result, the undersigned recommends that Petitioner's claim that he received an unfair trial due to the pretrial publicity involved in his case, and that the trial court erred by not *sua sponte* ordering a change of venue, be denied.

The Michigan Court of Appeals reached the same conclusion when it denied this claim on the merits:

> In determining whether defendant was deprived of a fair jury on the ground of extensive pretrial publicity, the initial question is whether the effect of pretrial publicity "was such 'unrelenting prejudicial pretrial publicity [that] the entire community will be presumed both exposed to the publicity and prejudiced by it, entitling defendant to a change of venue.'" [sic] *People v. Jendrzejewski*, 455 Mich. 395, 501; 566 NW2d 530 (1997), quoting *Mu'Min v. Virginia*, 500 U.S. 415, 442 n.3; 111 S Ct 1899; 114 L.Ed.2d 493 (1991). Juror exposure to media coverage "does not in itself establish a presumption that a defendant has been deprived of a fair trial by virtue of pretrial publicity." *Id.* at 502. Even when jurors have been exposed to adverse publicity and hold preconceived notions of guilt or innocence, a change of venue is not necessary if the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court. *People v. Harvey*, 167 Mich.App. 734, 741; 423 NW2d 335 (1988). The defendant has the burden to demonstrate "the existence of actual prejudice or the presence of a strong community feeling or a pattern of deep and bitter prejudice so as to render it probable that the jurors could not set aside their preconceived notions of guilt, notwithstanding their statements to the contrary." *Id.* at 741-742, citing *Sheppard v. Maxwell*, 384 U.S. 333; 86 S Ct 1507; 16 L.Ed.2d 600 (1966). The totality of the circumstances should be evaluated on appeal in determining whether the defendant was deprived of a fundamentally fair and impartial trial. *Jendrzejewski*, *supra* at 502; *Harvey*, *surpa* at 742.
>
> Here, defendant attaches to his brief on appeal newspaper articles concerning this case. However, as discussed in Part III of this opinion, this Court may not consider these articles, as they are not part of the lower court record, and this Court may not take judicial notice of newspaper articles. *McKinney*, *supra* at 161 n 4; *Sherman*, *supra* at

> 56. Furthermore, defendant does not address the tone of the media coverage, allege the media coverage unfairly depicted defendant as guilty of the crime, or make any effort to demonstrate the extensiveness of the publicity surrounding this case. Defendant does not allege that the prospective jurors' responses during voir dire show that they were impermissibly tainted or that any prospective jurors admitted to disqualifying prejudice. Thus, defendant has failed to demonstrate a pattern of strong community feeling or bitter prejudice against him that would have warranted a change of venue. *Harvey*, *supra* at 742. The trial court's failure to sua sponte change venue due to pretrial publicity was not a plain error that affected defendant's substantial rights.

*Terrell*, 2004 WL 1254310, at **4-5; *see also* ECF No. 21 at 9-10. The decision of the appellate court is thorough and complete, and it was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Consequently, it is recommended that Petitioner's change of venue claim be denied.

Accordingly, it is recommended that the Petition for writ of habeas corpus be dismissed.

Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  The undersigned examined each of Petitioner's claims under the

*Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, this Court recommends that a **CERTIFICATE OF APPEALABILITY BE DENIED** as to each issue raised by Petitioner.

In summary, the undersigned recommends that Petitioner's habeas claims I, II, V, VI, VII, and VIII (ECF No. 7), filed pursuant to 28 U.S.C. § 2254, be **DISMISSED WITH PREJUDICE** while claim III be **DISMISSED WITHOUT PREJUDICE**.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   August 3, 2016                                                     /s/ Timothy P. Greeley
                                                                  TIMOTHY P. GREELEY
                                                                  UNITED STATES MAGISTRATE JUDGE